ACCEPTED
01-1400956-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
12/30/2014 12:59:24 PM
CHRISTOPHER PRINE
CLERK

## NO. 01-14-00956-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
12/30/2014 12:59:24 PM
CHRISTOPHER A. PRINE
Clerk

**IN THE COURT OF APPEALS FOR THE**
**1st COURT OF APPEALS DISTRICT OF TEXAS**
**HOUSTON, TEXAS**

**IN RE DUSTIE DAVENPORT,**
**Realtor**

Original Proceeding
On Petition for Writ of Mandamus from County Probate Court at Law No. 4
Harris County, Texas
Trial Court Cause No. 411333

**RECORD IN SUPPORT OF**
**RESPONSE TO PETITION FOR WRIT OF MANDAMUS**

MARCIA PEVEY
Texas Bar No. 00784754
Law Offices of Marcia Pevey
1001 West Loop South, Suite 809
Houston, Texas 77027
Tel: 713-526-9927
Fax: 713-623-2833
Marcia@PeveyLaw.com

Party in Interest

## NO. 01-14-00956-CV

---

### IN THE COURT OF APPEALS FOR THE
### 1st COURT OF APPEALS DISTRICT OF TEXAS
### HOUSTON, TEXAS

---

### IN RE DUSTIE DAVENPORT,
### Realtor

---

Original Proceeding
On Petition for Writ of Mandamus from County Probate Court at Law No. 4
Harris County, Texas
Trial Court Cause No. 411333

---

### RECORD IN SUPPORT OF
### RESPONSE TO PETITION FOR WRIT OF MANDAMUS

---

TO THE HONORABLE COURT OF APPEALS:

Pursuant to Texas Rule of Appellate Procedure 52.7(b), Marcia Pevey files this record in Support of Response to Petition for Writ of Mandamus. All of the filed documents contained in this record are certified, true and correct copies of originals. The USPS tracking records are from the USPS web site.

Pursuant to Texas Rule of Appellate Procedure 52.7(a) (2), no testimony was adduced in connection with the Orders that are the subject of the Response to Petition for Writ of Mandamus.

Dated: December \_\_\_, 2014

Respectfully submitted,

*Marcia Pevey*

MARCIA PEVEY
Texas Bar No. 00784754
Law Offices of Marcia Pevey
1001 West Loop South, Suite 809
Houston, Texas 77027
Tel: 713-526-9927
Fax: 713-623-2833
Marcia@PeveyLaw.com

## CERTIFICATE OF SERVICE

I herby certify that a true copy of the above and foregoing Records in Support of Response to Petition for Writ of Mandamus was served on Respondent The Honorable Christine Butts and Relator at the addresses listed below in accordance with the Texas Rules of Appellate Procedure by certified mail, return receipt requested on this the \_\_\_ day of December, 2014.

The Honorable Christine Butts
Harris County Probate Court No. 4
Harris County Civil Courthouse
201 Caroline, 7th Floor
Houston, Texas 77002

Craig Seldin
TBN: 18005300
Law Offices of Craig Seldin PLLC
24 Sugarberry Circle, Houston, Texas 77024-7251
Tel: 713-622-4400
Fax: 713-622-7368
Attorney for Relator

*Marcia Pevey*

MARCIA PEVEY

*Party in Interest*

# TABLE OF CONTENTS

Order Appointing Permanent Guardian
of the Person and Estates................................................................MR 1,2

Order Appointing Successor Guardian of Person..................................RR 1

Physicians Certificate of Medical
Examination by Victor R Scarano, M.D., J.D. .....................................RR 2- 8

Letter Opinion of Robert G. Harper, Ph.D.
Menninger Associate Professor of Psychiatry
and Behavioral Sciences. ................................................................RR 9

Motion to Restrict Visitation............................................................MR 3,4

Order to Restrict Visitation..............................................................MR 5

US Postal Service certified receipt #70111570000270463303
USPS Tracking................................................................................RR 10, 11

Motion to Bar Access......................................................................MR 6,7

Order to Bar Access........................................................................MR 8

US Postal Service certified receipt
#70112000000252879835
USPS Tracking and Returned
Envelope marked Unclaimed...........................................................RR 12- 14

Affidavit Esther Ross.......................................................................RR 15

Affidavit Marcia Pevey....................................................................RR 16, 17

CAUSE NO. 411.333

| | | |
|---|---|---|
| IN RE: GUARDIANSHIP OF | § | IN PROBATE |
| RICHARD L. WOODSIDE | § | COURT NUMBER FOUR (4) |
| AN INCAPACIATED PERSON | § | HARRIS COUNTY, TEXAS |

### ORDER APPOINTING SUCCESSOR GUARDIAN OF THE PERSON

On this day the Court finds that SANDRA MIKSCH, who was appointed GUARDIAN OF THE PERSON of RICHARD L. WOODSIDE, AN INCAPACITATED PERSON, has resigned; that a necessity still exists for a guardian of the person.

**IT IS THEREFORE ORDERED** THAT MARCIA PEVEY shall serve as Successor Guardian of the Person of RICHARD L. WOODSIDE, AN INCAPACITATED PERSON, and that the clerk shall issue letters of guardianship upon the filing of the Oath and with no bond required.

**IT IS FURTHER ORDERED** that all cost incident to this order be hereby waived.

SIGNED this _23_ day of _October_____, 2012.

_____
CHRISTINE BUTTS
JUDGE, PROBATE COURT FOUR

FILED
2012 OCT 25 AM 11: 28
COUNTY CLERK
HARRIS COUNTY TEXAS

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 12/22/2014
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy
SONG THI NGAN TRAN



RR 1

## PHYSICIAN'S CERTIFICATE OF MEDICAL EXAMINATION

In the Matter of the Guardianship of
Richard Lee Woodside, Jr.,
An Alleged Incapacitated Person.

For Court Use Only
Court Assigned: Probate Court #4
Cause No. 411,333

The purpose of this certificate is to enable the Court to determine whether the individual identified above is incapacitated according to the legal definition, and whether a guardian should be appointed to care for him.

### DEFINITION OF INCAPACITY

For purposes of this certificate, an "*Incapacitated Person*" is "*an adult individual who, because of a physical or mental condition, is substantially unable to provide food, clothing or shelter for himself or herself, to care for the individual's own physical health, or to manage the individual's own financial affairs.*" Texas Probate Code §601 (14).

### GENERAL INFORMATION

Proposed Ward's Name: Richard Lee Woodside, Jr.
Date of Birth: July 12, 1969; Age: 42; Gender: Male
Current Location of Ward: Pine Tree Assisted Living, 5128 Pine Avenue, Pasadena, Harris County, Texas 77503
Physician's Name: Victor R. Scarano, M.D., J.D.; Phone: (713) 667-6903
Office Address: 5252 Westchester, Suite 125, Houston, Texas 77005.

I am a physician currently licensed (J-8117) to practice in the State of Texas.
I have not been the doctor or prescribed treatment for Mr. Woodside, the Proposed Ward.

I last examined Mr. Woodside, the Proposed Ward, at his residence on Monday, June 25, 2012, at the Pine Tree Assisted Living, 5128 Pine Avenue, Pasadena, Texas.

Mr. Woodside, the Proposed Ward, has not been under my continuing treatment. Prior to the examination, I informed Mr. Woodside, the Proposed Ward, that communications with me are not privileged.

A mini-mental status exam was given. A copy is attached to this certificate.

Based upon my last examination of the Proposed Ward, I provide the following information:

2012 JUL 16 AM 8: 39
COUNTY CLERK
HARRIS COUNTY TEXAS
FILED

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 12/22/2014
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy
Krystal Chavez



RR2

## 1. EVALUATION OF THE PROPOSED WARD'S PHYSICAL CONDITION

Physical Diagnosis:

a. March 2003: hemorrhagic stroke involving the occipital lobes of the brain malignant cerebral edema and increasing intracranial pressure requiring a neurosurgical right temporal craniotomy and temporal lobe resection to save his life.
b. Cortical blindness secondary to (a).
c. Seizure Disorder secondary to his hemorrhagic stroke and neurosurgical procedure.
d. Hyperlipidemia.

Conditions underlying the diagnoses: The March 2003 hemorrhagic stroke and neurosurgical procedure with subsequent development of seizure disorder

a. Prognosis:
*The residual of the hemorrhagic stroke and cortical blindness have been treated and stabilized. As a Veteran who suffered his stroke while on active duty, Mr. Woodside receives ongoing medical care through the Michael E. DeBakey Veterans Administration Medical Center (MEDVAMC).*

b. Severity:
*In March 2003, Mr. Woodside suffered significant brain injury necessarily compounded by the right neurosurgical temporal craniotomy and temporal lobectomy. CT scan of Mr. Woodside's brain shows loss of brain tissue and abnormalities in areas of the remaining brain tissue. Mr. Woodside's cortical blindness is fixed and will not improve. His seizure disorder appears to be appropriately treated with anti-seizure medications.*

c. Treatment:
*Mr. Woodside continues to receive appropriate treatment for his physical disabilities at the MEDVAMC*

## 2. EVALUATION OF THE PROPOSED WARD'S MENTAL FUNCTION

Mental Diagnosis:

a. March 2003: hemorrhagic stroke involving the occipital lobes of the brain malignant cerebral edema and increasing intracranial pressure requiring a neurosurgical right temporal craniotomy and temporal lobe resection to save his life.
b. Vascular Dementia secondary to (a).
c. Major Depressive Disorder, partially treated, related to his physical and psychological deficits.
d. Behavioral control problems.

Conditions underlying the diagnoses: The March 2003 hemorrhagic stroke and neurosurgical procedure with subsequent development of seizure disorder

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 12/22/2014
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Krystal Chavez



RR 3

3

a. Prognosis:
Mr. Woodside suffered a major brain injury in March 2003 with subsequent ongoing and continuing physical and mental deficits. In the ensuing 12 years, Mr. Woodside's progress has been poor in dealing with these residual deficits. Despite professional and personal interest in helping Mr. Woodside to learn and develop positive strategies in coping with his deficits, he has been unable to do so. His mental deficits appear to be the most damaging to his past, present, and continuing well-being, as he seems unable to navigate the subtle intricacies of mature reciprocal and collaborative relationships. Mr. Woodside has been unable to understand and appreciate how his self-centeredness has caused ongoing problems and unhappiness in his life. Mr. Woodside has been unable to learn that it is his responsibility to use the resources of family and the outside world in learning to develop the skills and strategies to minimize, as best he can, the deficits he must live with for the rest of his life. Instead, to Mr. Woodside it is the responsibility of the family and the outside world to satisfy his needs and wants and to make his world a happier place. Such a view is doomed to disappoint. Thus, at this point in his life, the prognosis for improvement is poor.

b. Severity:
Mr. Woodside's mental deficits are significant. There has been little improvement in the ensuing 12 years. For 10 of those years, Mr. Woodside was married to his then wife, Katie, who was willing to do what needed to be done for her husband and their children. Katie kept her husband at home and the family intact until Mr. Woodside directed his violent behavior towards one of the children. The severity of his mental deficits became obvious when he forced the divorce with his wife, and demonstrated his inability to safely navigate the outside world on his own.

c. Treatment:
Treatment must be directed in helping Mr. Woodside develop an appreciation of how his behavior affects the world outside of himself and the reciprocal nature of interpersonal relationships. One possibility is to research whether Mr. Woodside would qualify for a seeing-eye dog or guide dog for the blind. Mr. Woodside and the dog will be required to go through a training program to evaluate how he and the dog bond, as well as taking individual classes on how he is to care for the guide dog, who will be his new and constant companion. In this process, Mr. Woodside through the care of and respect for his guide dog can grasp the concept that their mutual dependence and love will help both of them to meet their needs and wants resulting in a more satisfied existence for both.

☑ Yes ☐ No  A summary of Mr. Woodside's, the Proposed Ward's, medical history is attached (see Dr. Scarano's report).

☑ Yes ☐ No  Would Mr. Woodside, the Proposed Ward, benefit from supports and services that would allow him to live in the least restrictive setting?

☑ Yes ☐ No  Does this mental diagnosis include dementia?
Vascular Dementia.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 12/22/2014
**Stan Stanart, County Clerk**
Harris County, Texas



_____ Deputy
Krystal Chavez



RR 4

☑ Yes ☐ No  Would Mr. Woodside, the Proposed Ward, benefit from placement in a secured facility for the elderly or a secured nursing facility that specializes in the care and treatment of people with dementia?

☐ Yes ☑ No  Would Mr. Woodside, the Proposed Ward, benefit from medications appropriate to the care and treatment of dementia?

☐ Yes ☑ No  Does Mr. Woodside, the Proposed Ward, have sufficient capacity to give informed consent to the administration of dementia medications?

## 3. DECISION MAKING

Alertness – Attention – Deficits

Alertness: ☑ Alert      ☐ Lethargic      ☐ Stupor

Mr. Woodside, the Proposed Ward, at the time of this forensic psychiatric examination/ evaluation, was oriented to Person, Place, and Situation, but he did not know the day of the month.

In my opinion, the ability of Mr. Woodside, the Proposed Ward, to make or communicate responsible decisions concerning himself is affected by his deficits and abilities as indicated:

Deficits: ☑ Short-term memory; ☐ Long-term memory; ☑ Immediate recall

☐ Yes ☑ No  Able to understand and communicate (verbally or otherwise).

*Mr. Woodside is able to communicate his wants and needs; however, he lacks the ability to understand and appreciate how the wants and needs of those outside of himself impact his personal and financial wellbeing. Due to his primary self-centered focus, Mr. Woodside is vulnerable to those with ulterior motives who seek to take advantage of him. Though Mr. Woodside understands the concept of give and take, it never goes beyond a very basic and simplistic form. For instance, Mr. Woodside commented that he was very nice to Katie on their honeymoon in 1988, so he couldn't understand why she lost sexual interest in him when their marriage was in trouble. If his wife could be his caregiver and get paid for it, why would Christi take advantage of him financially?*

☑ Yes ☐ No  Able to recognize familiar objects and persons.

*Mr. Woodside for all intents and purposes is totally blind. His hearing, according to Mr. Woodside, is more acute due to his blindness and he is able to recognize voices. With his sense of touch he is able to manipulate his folding cane, wash dishes, open doors, etc.*

☑ Yes ☐ No  Able to perform simple calculations.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 12/22/2014
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Krystal Chavez



RR5

5

☐ Yes ☒ No Able to reason logically. (*See above response.*)

*Mr. Woodside's self-centered focus blocks his ability to appreciate the motivations and strategies of others in their relationship with him. Thus, in my opinion he lacks logical reasoning in the important life skills regarding interpersonal communications and relationships.*

☐ Yes ☒ No Able to grasp abstract aspects of his situation and carry them out.

☐ Yes ☒ No Mr. Woodside's, the Proposed Ward's, periods of impairment from the deficits indicated above (if any) vary substantially in frequency, severity, or duration.

In my opinion, Mr. Woodside, the Proposed Ward, is able to make or communicate responsible decisions concerning himself regarding the following:

A. Business and Managerial Matters; Financial Matters

☐ Yes ☒ No Contract and incur obligations; handle a bank account.

☐ Yes ☒ No If "Yes," should amount deposited in any such bank account be limited?

*For protection of Mr. Woodside and his assets, there should be an agreed upon limit in regards to funds at his disposal, i.e., shopping for necessities, grooming and haircuts, occasional outings, etc.*

☐ Yes ☒ No Apply for, consent to and receive governmental benefits and services.

*Mr. Woodside already receives governmental benefits and services. However, in the future if any issues arise in regards to his governmental benefits and services, the guardian should confer and work with Mr. Woodside in resolving them.*

☐ Yes ☒ No Accept employment.

*Mr. Woodside is physically well enough that he might want to consider doing volunteer work at the MEDVAMC or at church. This could provide Mr. Woodside with something to do and a feeling that he is doing something useful and productive.*

☐ Yes ☒ No Hire employees.

☐ Yes ☒ No Sue and defend law suits.

☐ Yes ☒ No Make gifts of real or personal property?

☐ Yes ☒ No Execute a Durable Power of Attorney?

☐ Yes ☒ No Execute a Health Care Power of Attorney?

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 12/22/2014
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Krystal Chavez



RR6

### B. Personal Living Decisions

☐ Yes ☑ No  Determine own residence?

> *Though his guardian should have the final say, it is recommended that Mr. Woodside be included in the decision regarding where he is to live.*

☐ Yes ☑ No  Safely operate a motor vehicle?

☐ Yes ☑ No  Vote in a public election?

☐ Yes ☑ No  Make decisions regarding marriage?

### C. Medical Decision-Making

☐ Yes ☑ No  Consent to medical, dental, psychological, and psychiatric treatment?

> *The guardian, though retaining final say, should confer with Mr. Woodside regarding his medical, dental, psychological, and psychiatric care. The guardian and Mr. Woodside will be able to more properly evaluate the distinctions between necessary, unnecessary, and optional treatments.*

☐ Yes ☑ No  Administer own medications on a daily basis?

### D. Daily Life Activities

Administer to daily life activities (e.g., bathing, grooming, dressing, walking, toileting):

☐ Yes, independently   ☑ Yes, with assistance   ☐ No, requires total care

### 4. DEVELOPMENTAL DISABILITY

☐ Yes ☑ No  Does Mr. Woodside, the Proposed Ward, have developmental disability?

### 5. EVALUATION OF CAPACITY

☑ Yes ☐ No  Based on the information above, it is my opinion that Mr. Woodside, the Proposed Ward, is incapacitated according to the definition given at the top of page 1.

If "YES," please indicate the level of incapacity

☐ PARTIAL  ☑ TOTAL

If you answered "YES" to any of the questions regarding decision-making in Section 3 and believe Mr. Woodside, the Proposed Ward, is totally incapacitated, please explain:

*Though Mr. Woodside can recognize familiar objects and persons using the senses of hearing and touch, and though he can perform simple calculations, they are not the criteria by which deficits in memory and executive function are evaluated. Mr.*

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 12/22/2014
**Stan Stanart, County Clerk**
Harris County, Texas


_____ Deputy
Krystal Chavez



RR7

*Woodside's deficits in short term and immediate memory and executive function leave him vulnerable to exploitation, which is the reason why he needs a guardian to protect his personal and financial well-being.*

## 6. ABILITY TO ATTEND COURT HEARING

☑ Yes ☐ No  Mr. Woodside, the Proposed Ward, would be able to attend, understand, and participate in the hearing.

☐ Yes ☑ No  Because of his incapacities, it would **not** be advisable for Mr. Woodside, the Proposed Ward, to appear at a Court hearing because he would not be able to understand or participate in the hearing.

☐ Yes ☑ No  Does any current medication taken by Mr. Woodside, the Proposed Ward, affect the demeanor of Mr. Woodside's ability to participate fully in a court proceeding.

## 7. ADDITIONAL INFORMATION OF BENEFIT TO THE COURT

If you have additional information concerning Mr. Woodside, the Proposed Ward, that you believe the Court should be aware of or other concerns about Mr. Woodside that are not included above, please explain:

*Attached is a copy of Dr. Scarano's Forensic Psychiatric Evaluation and Dr. Harper's review of the Neuropsychological Evaluations of Richard Lee Woodside, Jr., performed at the MEDVAMC. These reports will provide a more detailed description of his present capabilities and deficits.*

July 2, 2012

Victor R. Scarano, M.D., J.D.
Texas Law & Psychiatry, PLLC
P.O. Box 25371
Houston, Texas 77265
(713) 667-6903
(713) 667-6904 (fax)

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 12/22/2014
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Krystal Chavez



RR8

Richard. Woodside, Jr. II — 411333

**BCM**
Baylor College of Medicine

ROBERT G. HARPER, Ph.D.
Associate Professor
Menninger Department of Psychiatry &
Behavioral Sciences

MAILING ADDRESS:
ONE BAYLOR PLAZA
MS: BCM350
HOUSTON, TEXAS 77030

PHYSICAL ADDRESS:
1977 BUTLER BOULEVARD
SUITE E4.400
HOUSTON, TEXAS 77030

713-798-6379
713-798-3465 FAX

June 26, 2012

Victor Scarano, M.D., J.D.
Texas Law & Psychiatry, PLLC
5252 Westchester, Suite 125
Houston, Texas 77005

Dear Dr. Scarano:

I have reviewed the email copies of the neuropsychological evaluations conducted on Mr. Richard Lee Woodside, Jr. at the Houston VA. These include the neurocognitive testings completed in December 2008, February 2012, and the supplemental Independent Living Scales evaluation on April 6, 2012. Considering Mr. Woodside's deficits, the evaluations are thorough and adequate to assess the issues at hand.

It is my understanding that the primary concern is Mr. Woodside's ability to function independently and exercise adequate judgment on his behalf. Particularly important are the findings of the living skills evaluation which assess his current capacity to problem solve potential hazards involved in everyday living (e.g., what to do with a gas leak). As indicated in the report he showed pervasive deficits in these areas. He also has reportedly shown poor interpersonal judgment in selecting trustworthy individuals to look out for his interests. Given that he exhibits marked recent memory impairment it is clear that these deficits cannot be remediated by "training" that would rely upon his ability to acquire and make use of new information. His history of low frustration tolerance and belligerent interaction when things do not go his way is also a reflection of his central nervous system dysfunction.

Given Mr. Woodside's visual impairments, full assessment for executive cognitive deficits cannot be conducted using instruments relying upon visual input, on which many of the measures of executive functions are based. However, I believe there is ample demonstration of actual poor judgment and impaired reasoning in important pragmatic contexts such that given the totality of the evaluations findings and his background history, Mr. Woodside cannot be considered capable of making judgments in his own best interests. I do not think there is any further neurocognitive testing that can be done that would add any additional useful information.

Sincerely,

Robert G. Harper, Ph.D.
Menninger Associate Professor of Psychiatry and Behavioral Sciences

FILED
2012 JUL 16 AM 8:39
COUNTY CLERK
HARRIS COUNTY, TEXAS

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 12/22/2014
**Stan Stanart, County Clerk**
Harris County, Texas


JESSICA C. HAVERLY _____ Deputy



RR 9



# USPS Tracking™



Customer Service ›
Have questions? We're here to help.

Tracking Number: 70111570000270463303

## Product & Tracking Information                    Available Actions

**Postal Product:**                 **Features;**
                                    Certified Mail™

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **April 4, 2013 , 4:22 am** | Arrived at Unit | **DEER PARK, TX 77536** |

Your item arrived at the Post Office at 4:22 am on April 4, 2013 in DEER PARK, TX 77536.

| | | |
|---|---|---|
| April 4, 2013 , 1:40 am | Departed USPS Facility | HOUSTON, TX 77201 |
| April 4, 2013 , 1:38 am | Arrived at USPS Facility | NORTH HOUSTON, TX 77315 |
| April 3, 2013 , 8:55 pm | Departed USPS Facility | HOUSTON, TX 77201 |
| April 3, 2013 , 8:03 pm | Arrived at USPS Facility | HOUSTON, TX 77201 |

## Track Another Package

**Tracking (or receipt) number**

                                                            Track It

**HELPFUL LINKS**        **ON ABOUT.USPS.COM**      **OTHER USPS SITES**           **LEGAL INFORMATION**

Contact Us               About USPS Home            Business Customer Gateway       Privacy Policy
Site Index               Newsroom                   Postal Inspectors               Terms of Use
FAQs                     USPS Service Updates        Inspector General              FOIA
                         Forms & Publications        Postal Explorer                No FEAR Act EEO Data
                         Government Services         National Postal Museum
                         Careers                     Resources for Developers

Copyright © 2014 USPS. All Rights Reserved.

RR10

No. 411333

| GUARDIANSHIP OF | § § | IN THE PROBATE COURT |
| | § | |
| RICHARD LEE WOODSIDE, JR. | § | NO. FOUR (4) |
| | § § | |
| AN INCAPACITATED PERSON | § | HARRIS COUNTY, TEXAS |

## ORDER TO RESTRICT VISITATION

On this day, came to be considered the Motion to Restrict Visitation filed by Marcia Pevey, Guardian of the Person and Estate ("Movant"), and after considering the evidence, the Court finds that it is in the best interest of the Ward to restrict Duty Davenport's visit with the Ward and that this motion should be granted.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Dusty Davenport's visits with Richard Lee Woodside, Jr., an Incapacitated Person, currently residing at The Hampton, are restricted to:

A. visitation only between the hours of 10:00 am to 7:00 pm
B. visitation at the Hampton only Monday through Saturday – never on Sunday
C. visitation at the Hampton with the Ward restricted to the public areas of The Hampton. Dusty Davenport is not allowed into Ward's room.
D. no over-night visits on or off the Hampton campus
E. all visits must end by 7:00 pm

SIGNED this _27_ day of March, 2013.

*Christine Butts*
PRESIDING JUDGE

RR11

Conformed Copy To:
Marcia Pevey
1001 West Loop South, Ste. 809
Houston, Texas 77027
713 526 9927

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

7046 3303 0002 0570 7011

Sent To
Ms. Dusty Davenport
Street, Apt. No.; or PO Box No.
232 E 5th Street
City, State, ZIP+4
Deer Park, TX 77536-2720

English    Customer Service    USPS Mobile           Register / Sign In


**USPS.COM**

Search USPS.com or Track Packages

Quick Tools      Ship a Package    Send Mail    Manage Your Mail    Shop    Business Solutions

# USPS Tracking™

Customer Service ›
Have questions? We're here to help.

Tracking Number: **70112000000252879835**

## Product & Tracking Information

**Postal Product:**      **Features:**
Certified Mail™

## Available Actions

Text Updates

Email Updates

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **June 27, 2014 , 9:21 am** | Arrival at Unit | **HOUSTON, TX 77027** |

Your item arrived at 9:21 am on June 27, 2014 in HOUSTON, TX 77027. Information, if available, is updated periodically throughout the day. Please check again later.

| | | |
|---|---|---|
| June 27, 2014 , 2:28 am | Depart USPS Sort Facility | HOUSTON, TX 77201 |
| June 27, 2014 , 1:36 am | Processed through USPS Sort Facility | HOUSTON, TX 77201 |
| June 26, 2014 , 9:22 pm | Processed through USPS Sort Facility | NORTH HOUSTON, TX 77315 |
| June 21, 2014 , 2:31 pm | Unclaimed | DEER PARK, TX 77536 |

## Track Another Package

**What's your tracking (or receipt) number?**

Track It

**LEGAL**
Privacy Policy ›
Terms of Use ›
FOIA ›
No FEAR Act EEO Data ›

**ON USPS.COM**
Government Services ›
Buy Stamps & Shop ›
Print a Label with Postage ›
Customer Service ›
Delivering Solutions to the Last Mile ›
Site Index ›

**ON ABOUT.USPS.COM**
About USPS Home ›
Newsroom ›
USPS Service Alerts ›
Forms & Publications ›
Careers ›

**OTHER USPS SITES**
Business Customer Gateway ›
Postal Inspectors ›
Inspector General ›
Postal Explorer ›
National Postal Museum ›

**USPS.COM**    Copyright© 2014 USPS. All Rights Reserved.

RR 12

LAW OFFICE OF

# MARCIA M. PEVEY

1001 W. Loop South, Suite 809 / Houston, Texas 77027

CERTIFIED MAIL

7011 2000 0002 5287 9835

Ms. Dusty Davenport
232 E. 5th Street
Deer Park, TX NIXIE

RETURN TO SENDER
UNCLAIMED
UNABLE TO FORWARD

773 4E 1009 7206/26/14

BC: 77027 *2733-01821-24-37

775362720¢



RR13

No. 411333

| GUARDIANSHIP OF | § | IN THE PROBATE COURT |
| | § | |
| RICHARD LEE WOODSIDE, JR. | § | NO. FOUR (4) |
| | § | |
| AN INCAPACITATED PERSON | § | HARRIS COUNTY, TEXAS |

JUN 27 2014

## ORDER TO BAR ACCESS

On this day, came to be considered the Motion to Bar Access filed by Marcia Pevey, Guardian of the Person and Estate ("Movant"), and after considering the evidence, the Court finds that it is in the best interest of the Ward to completely bar ~~Duty~~ *Dusty* Davenport's access to the Richard Lee Woodside, Jr. and that this motion should be granted.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Dusty Davenport shall stay more than 500 yards away from Richard Lee Woodside, Jr. at all times.

SIGNED this 23 day of April, 2014.

*Christine Bortis*
PRESIDING JUDGE

Conformed Copy To:
Marcia Pevey
1001 West Loop South, Ste. 809
Houston, Texas 77027
713 526 9927



| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. ■ Print your name and address on the reverse so that we can return the card to you. ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature X ☐ Agent ☐ Addressee |
| | B. Received by ( *Printed Name* )    C. Date of Delivery |
| 1. Article Addressed to: Ms. Dusty Davenport 232 E. 5th Street Deer Park, TX 77536 | D. Is delivery address different from item 1? ☐ Yes If YES, enter delivery address below: ☐ No |
| | 3. Service Type ☐ Certified Mail ☐ Express Mail ☐ Registered ☐ Return Receipt for Merchandise ☐ Insured Mail ☐ C.O.D. |
| 7011 2000 0002 5287 9835 | 4. Restricted Delivery? ( *Extra Fee* ) ☐ Yes |

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

A CERTIFIED COPY
APR 2 3 2014
ATTEST: _____
STAN STANART, County Clerk
Harris County, Texas

_____ Deputy

RR14

## AFFIDAVIT OF ESTHER ROSS

STATE OF TEXAS       §

                           §

COUNTY OF HARRIS       §

Before me, the undersigned authority, on this day, personally appeared Esther Ross, known to me to be the person whose name is subscribed below and having been by me duly sworn, upon her oath, disposes and states as follows:

"My name is Esther Ross and I am the legal assistant to Marcia Pevey, attorney at law. As legal assistant, I assist Marcia Pevey's clients, many of which are court appointed guardians, including Sandra Miksch. Ms. Miksch was appointed Guardian of the Person of her son, Richard L. Woodside, Jr.("Ward"), by order of this Court on August 15, 2012. As Guardian of the Person, Sandra Miksch's duties included frequent visits with her son to see that his needs were met.

October 12, 2012, I received a phone call from Ms. Miksch stating that when she visited with Ward, Ward's friend, Dusty Davenport ("Dusty"), was with Ward. Both were verbally agressive toward her. Ms. Miksch was very upset and stated that Dusty was encouraging Ward's aggressive behavior towards her.

October 17, 2012, I received a phone call from Ms. Miksch, who was very upset, complaining about the way she was being treated by Dusty when she visited with Ward. Sne stated that it was very apparent that Dusty did not want her around the Ward and that Dusty influenced Ward to behave in a very disrespectful way toward her.

October 19, 2012, Ms. Miksch was in my office and stated to me that she could no longer accept being treated the way she was by Ward when Dusty was in the room. Ward no longer showed Ms. Miksch any respect due to Dusty's influence. Ms. Miksch no longer wanted to be Guardian of the Person of Ward.

October 19, 2012, Ms. Miksch wrote a note to Court Four stating she was stepping down from the Guardianship of Richard L. Woodside, Jr.

I received further calls from Ms. Miksch during November, 2012, still complaining of Dusty's agressive attitude towards her even after she resigned as Ward's guardian. Ms. Miksch stated she no longer visits with Ward, if Dusty is with him.

I, Esther Ross, having been duly sworn hereby state on oath that the foregoing statements are true to my knowledge on the above assessment.

_____
Esther Ross

STATE OF TEXAS       §

                           §

COUNTY OF HARRIS       §

SWORN TO AND SUBSCRIBGED BEFORE ME BY ESTHER ROSS on this 23 day of December 2014, to certify which witness my hand and seal of office.

_____
NOTARY PUBLIC OF TEXAS

GUADALUPE YULIANA CARBAJAL
Notary Public, State of Texas
My Commission Expires
June 14, 2017

RR
15

## AFFIDAVIT OF MARCIA PEVEY

STATE OF TEXAS     §

                   §

COUNTY OF HARRIS   §

Before me, the undersigned authority, personally appeared Marcia Pevey, known to me to be the person whose name is subscribed below and having been sworn, upon her oath, deposes and states as follows:

My name is Marcia Pevey and I am the Guardian of the Person and Estate of Richard Woodside, an incompetent person ("Ward").

I first became aware of Dusty Davenport ("Dusty") when Ward's mother resigned as Guardian of his Person due to abusive treatment by Dusty and Ward when Dusty was present. The Court appointed me to serve as Successor Guardian of Ward's Person

The management of Pine Tree, seeking remedy to the problems with Ward and Dusty, contacted me. Dusty removed the Ward from Pine Tree without signing him out (a major concern as the Ward is totally without capacity); Dusty convinced the Ward that he could not have salt or dairy and therefore the food at Pine Tree was bad for him; Dusty moved her Uncle into Ward's extra bedroom and spent nights.

On March 1, 2013 I moved the Ward to his former residence at the Hampton in Pearland in order for him to live closer to his children and get a fresh start. The Hampton requested a Court Order Restricting Visitation of Dusty to the public areas of the Hampton during the daytime hours to prevent the noisy sex when she was in Ward's room. The Order when signed was sent to the Hampton and to Dusty Certified Return Receipt Requested (USPS tracking shows that delivery to Dusty attempted, notice left and Letter returned unclaimed). Dusty received the order from the Hampton on her next visit. To circumvent the order Dusty got another person to pick up the Ward and did not return him to the Hampton until after the time for his medications causing Ward to become belligerent and aggressive when unable to get medications. The Police were called on two occasions to restore order and the incidents were written up for the main office of Brookdale Communities, as per their policies, "black balling" the Ward from their communities. Management of the Hampton was unable to manage the Ward while he was under the influence of Dusty.

On April 12, 2014 Ward was moved to Westbrae Court Retirement Community. Westbrae requested the Order to Bar Contact after Dusty caused disruption in that community both with Ward's children and another resident who was attempting to mentor Ward around facility. The Order when signed was taken to Westbrae management and sent to Dusty Certified Return Receipt Requested (USPS tracking shows that delivery received). Dusty received the Order from Westbrae management the next time she appeared on the premises. Dusty continues to call and email the Ward.

*RR*

*16*

I, Marcia Pevey, having been duly sworn, hereby state on oath that the foregoing statements are true to my knowledge on the above assessment.

_Marcia Pevey_

Marcia Pevey, Guardian of the Person and Estate of Richard Woodside, Incapacitated

STATE OF TEXAS § 
§ 
COUNTY OF HARRIS §

SWORN TO AND SUBSCRIBED BEFORE ME BY ESTHER ROSS on this 29th day of December 2014, to certify which witness my hand and seal of office.

_Esther Ross_

NOTARY PUBLIC OF TEXAS

ESTHER ROSS
Notary Public, State of Texas
My Commission Expires
June 20, 2015

RR
17